**Dan RINDAL, Plaintiff,**

**v.**

**SECKLER CO. INC., Louis Dreyfus Corporation, S.A., Louis Dreyfus and C.I.E., Frank H. Seckler and James Dardanes, Defendants.**

**No.  CV–90–052–GF.**

United States District Court,
D. Montana,
Great Falls Division.

March 3, 1992.

Sharon M. Morrison, Morrison Law Offices, Helena, Mont., for plaintiff.

Sherman V. Lohn, Missoula, Mont., Jack W. Berryhill, Berryhill, Benjamin, Cage & North, P.C., Denver, Colo., Kenneth R. Dyrud, Richard F. Gallagher, Church, Harris, Johnson & Williams, Great Falls, Mont., Charles F. Brega, W. Keith Tiptoe, Brega & Winters, Denver, Colo., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### BACKGROUND

Plaintiff, Dan Rindal, instituted the above-entitled action seeking monetary damages for the defendants' purported breach of contract. Plaintiff's complaint also asserts claims for breach of the covenant of good faith and fair dealing, constructive fraud, fraud and conversion, as well as a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1332 and 18 U.S.C. § 1964(c).

Defendants Seckler Co. Inc. and Louis Dreyfus Corporation jointly moved the court to dismiss plaintiff's complaint, asserting (1) Montana is not the proper venue for this matter; and (2) plaintiff's RICO claim fails as a matter of law. Defendants Frank H. Seckler and James Dardanes subsequently moved the court to dismiss plaintiff's complaint for, *inter alia,* lack of personal jurisdiction.

On January 10, 1991, this matter was referred to the United States Magistrate Judge for the District of Montana, the Honorable Robert M. Holter, for findings and recommendation on defendants' motions. On May 16, 1991, the Magistrate Judge filed his report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), recommending the court dismiss plaintiff's complaint for improper venue. In accordance with 28 U.S.C. § 636(b)(1), plaintiff timely filed his written objections to the report. Having undertaken a complete review of the file herein, together with the parties' briefs in support of their respective positions, the court, after careful consideration, is prepared to rule.

### DISCUSSION

#### A. *Forum Selection Clause*

■ Rindal and defendant Louis Dreyfus Corporation ("Dreyfus") entered a "Range Feeding Agreement", whereby cattle were purchased by Dreyfus and placed under Rindal's care until they were sold. The cattle were kept on Rindal's ranches located in Montana and South Dakota. Rindal's compensation was based upon the weight gained by the cattle. The parties' agreement contained, among other provisions, the following forum selection clause:

> 7.8 Construction and Interpretation. This agreement shall be governed by the law of the State of Colorado. All issues of law concerning checks or other instruments given for payment under this Agreement, regardless of where presented or deposited, shall be governed by the laws of the State of Colorado. In the event of any action to enforce this agreement, the parties consent and agree to exclusive jurisdiction and venue in the District Court of the City and County of Denver, State of Colorado.

Defendants assert plaintiff's complaint should be dismissed because the proper venue for this action is Colorado, as mandated by the agreement's forum selection clause. In response, plaintiff contends forum selection clauses are void *ab initio* under Montana law, *see* Mont.Code Ann. § 28–2–708 (1991)[1], and, therefore, plain-

---

1. Mont.Code Ann. § 28–2–708 provides:
   Restraints upon legal proceedings void. Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals or

tiff's choice of venue is dispositive. In the alternative, plaintiff asserts the clause is contrary to Montana's public policy and should not be enforced. *See, State ex rel. Polaris Industries v. District Court*, 215 Mont. 110, 695 P.2d 471 (1985).

The issue dispositive of the motion to dismiss, as framed by the parties, suggests a conflict exists between Montana law, which disfavors enforcement of forum selection clauses, and federal common law, which considers such clauses presumptively valid. *American Performance, Inc. v. Sanford*, 749 F.Supp. 1094, 1095 (M.D.Ala. 1990), *citing, M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 1913, 1916, 32 L.Ed.2d 513 (1972). In resolving the conflict, the court is guided by the rationale of *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. *Erie* mandates that a federal court sitting in diversity apply federal law to procedural issues and the law of the forum state to substantive issues, absent a federal statutory or constitutional directive to the contrary. *Salve Regina College v. Russell*, — U.S. —, —, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190, 195 (1991).

Application of the *Erie* doctrine to the issue of whether state or federal law should govern the effect and scope of forum selection clauses has resulted in a divergence of opinion among the circuit courts of appeal. *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir.1988). The Third Circuit treats interpretation of forum selection clauses as a contract issue, to be resolved according to state law. *Id., citing, General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–57 (3rd Cir.1986).

The Eleventh Circuit, however, holds forum selection clauses are essentially procedural in nature and, therefore, are governed by federal law. *Id., citing, Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (11th Cir.1987) (per curiam), *aff'd on other grounds*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

*Stewart* is the Supreme Court's most recent word on the choice between state and federal law in the forum selection context. Although factually distinguishable [2], it establishes the appropriate analytical framework to be employed in resolving the present dispute. *See, American Performance, Inc. v. Sanford*, 749 F.Supp. 1094, 1095 (M.D.Ala.1990).

In *Stewart*, the Court held federal law, specifically 28 U.S.C. § 1404(a), governed the decision whether to give effect to the parties' forum selection clause. 487 U.S. at 32, 108 S.Ct. at 2245. As a result, the Court found it appropriate for the district court to consider the convenience of the stipulated forum, the fairness of the transfer, and the parties' relative bargaining power in deciding whether the clause should be enforced. 487 U.S. at 30, 108 S.Ct. at 2244.

Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command. Its application would impoverish the flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal system. The forum-selection clause, which represents the parties' agreement as to the most proper

---

which limits the time within which he may thus enforce his rights is void.

**2.** *Stewart* involved a motion to transfer an action, pursuant to 28 U.S.C. § 1404(a), to the venue provided in a contractual forum selection clause. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). A motion to transfer an action to another federal district pursuant to

section 1404(a) calls for an "individualized, case-by-case consideration of convenience and fairness." *Stewart, supra*, 487 U.S. at 29, 108 S.Ct. at 2244, *quoting, Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). The same broad-based balancing is not appropriate where, as here, a party seeks to have an action dismissed, rather than transferred, on the basis of a forum selection clause that purports to mandate litigation in a specific state court. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2nd Cir.1990).

forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a).

*Stewart, supra,* 487 U.S. at 31, 108 S.Ct. at 2245.

The Court was careful to note, however, that its decision hinged on the fact the decision to transfer venue of an action from one federal court to another is a matter within the ambit of a federal statute, 28 U.S.C. § 1404(a). 487 U.S. at 32 n. 11, 108 S.Ct. at 2245 n. 11. Absent a federal statute or an applicable Federal Rule of Civil Procedure, a district court, confronted with a choice-of-law problem, must evaluate whether application of federal common law would "disserve the so-called twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Stewart,* 487 U.S. at 27 n. 6, 108 S.Ct. at 2243 n. 6, *quoting, Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). "If application of federal judge-made law would disserve these two policies, the district court should apply state law." *Id., citing, Walker v. Armco Steel Corp.,* 446 U.S. 740, 752, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980).

In the case *sub judice,* the parties agree that no federal statute or Rule of Civil Procedure is directly on point in determining the effect of the contractual forum selection clause. *see, Manetti–Farrow, supra,* 858 F.2d at 512 n. 2. Accordingly, the court must determine whether application of federal common law would disserve the twin aims of *Erie. See, Alexander Proud-*

*foot Co. World Headquarters v. Thayer,* 877 F.2d 912, 918 (11th Cir.1989).

Given the conflict between federal law and the law of the State of Montana regarding forum selection clauses, application of federal law would, in this court's opinion, encourage forum shopping.[3] For example, a Montana resident could file suit in state court to avoid a forum selection clause and a diverse defendant would be encouraged to "shop" for the more advantageous federal law by removing the action to federal court. Likewise, a non-resident plaintiff hoping to avoid a contracted-for forum could choose the law of the State of Montana by filing suit in Montana state court. The "one-way" nature of the federal removal statute, 28 U.S.C. § 1441(b), would block a Montana resident's access to the local federal forum that would enforce the forum selection clause. This is exactly the situation deplored by the Court in *Erie. Stewart Organization, Inc. v. Ricoh Corp.,* 779 F.2d 643, 651 (11th Cir.1985) (Godbold, C.J., dissenting), *aff'd on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

Furthermore, applying federal law to enforce forum selection clauses would produce an inequitable administration of the laws, since there would exist an unfair discrimination between residents and non-residents of the forum state. *Erie, supra,* 304 U.S. at 74–75, 58 S.Ct. at 820–821; *Hanna, supra,* 380 U.S. at 467–69, 85 S.Ct. at 1141–1143. In *Stewart,* Justice Scalia, writing in dissent, stated:

> Whether discrimination is unfair in this context largely turns on how important is the matter in question.[4] *See, id.,* [*Hanna,* 380 U.S.] at 467–468, and n. 9, 85 S.Ct., at 1141–1142, and n. 9. The

---

**3.** Although differences among states may lead to interstate forum shopping, this is not the sort of forum shopping that *Erie* sought to eliminate. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941). *Erie* was concerned with uniformity of laws among federal and state courts sitting in the same state. *Id. see also, Hanna, supra,* 380 U.S. at 467, 85 S.Ct. at 1141–1142.

**4.** With respect to venue, Justice Scalia noted: Venue is often a vitally important matter, as is shown by the frequency with which parties

contractually provide for and litigate the issue. Suit might well not be pursued, or might not be as successful, in a significantly less convenient forum. Transfer to such a less desirable forum is, therefore, of sufficient import that plaintiffs will base their decisions on the likelihood of that eventuality when they are choosing whether to sue in state or federal court. *Stewart, supra,* 487 U.S. at 39–40, 108 S.Ct. at 2249.

decision of an important legal issue should not turn on the accident of diversity of citizenship, *see, e.g., Walker,* 446 U.S., at 753, 100 S.Ct., at 1986, or the presence of a federal question unrelated to that issue. It is difficult to imagine an issue of more importance, other than one that goes to the very merits of the lawsuit, than the validity of a contractual forum-selection provision. Certainly, the *Erie* doctrine has previously been held to require the application of state law on subjects of similar or obviously lesser importance. *See, e.g., Walker, supra* (whether filing of complaint or service tolls statute of limitations); *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 202–204, 76 S.Ct. 273, 275–277, 100 L.Ed. 199 (1956) (arbitrability); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. [541] 555–556, 69 S.Ct. [1221] 1229–1230 [93 L.Ed. 1528 (1949)] (indemnity bond for litigation expenses). Nor can or should courts ignore that issues of contract validity are traditionally matters governed by state law.[5]

*Stewart, supra,* (Scalia, J., dissenting) 487 U.S. at 40–41, 108 S.Ct. at 2249.

Under an *Erie* analysis, therefore, state law should govern the enforceability of the contractual forum selection clause at issue. Application of federal common law would disserve the twin aims of *Erie.* Specifically, disparate treatment of forum selection clauses by state and federal courts would increase forum shopping and encourage the inequitable administration of the laws between residents and non-residents. Accordingly, the court applies the law of the State of Montana to the parties' contractual forum selection provision.

As set forth above, Montana law disfavors enforcement of forum selection clauses. In *Polaris, supra,* the Montana Supreme Court held the parties' contractual forum selection clause was void under § 28-2-708, MCA as an improper restraint upon the plaintiff's exercise of its rights to enforce the subject contract by a "usual proceeding" in the "ordinary tribunals" of Montana. 695 P.2d at 472. Accordingly, § 28-2-708, MCA evinces a strong public policy protecting the substantive rights of Montana residents to seek redress in the courts of that state.

> The provisions of Art. II, Section 16, 1972 Montana Constitution, are further evidence of a strong public policy in this State that impedances to state courts may not be countenanced by us. The constitutional statement is that courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property or character. Forum selection clauses in contracts impede the right to judicial process and especially discourage a speedy remedy.

*Polaris, supra,* (Sheehy, J., specially concurring), 695 P.2d at 472.

Enforcement of the parties' forum selection clause would clearly contravene a strong public policy of the State of Montana, as articulated by Mont.Code Ann. § 28-2-708 (1991) and *State ex rel. Polaris Industries v. District Court, supra.* Consequently, the court concludes defendants' motion to dismiss for improper venue is appropriately denied since forum selection clauses are invalid under the law of the State of Montana.

For the reasons set forth herein,

---

**5.** It is beyond dispute that federal courts have the power to fashion procedural rules governing the practice and pleading in those courts. *See,* 28 U.S.C. § 2071; *Hanna v. Plumer,* 380 U.S. 460, 472, 85 S.Ct. 1136, 1144–1145, 14 L.Ed.2d 8 (1965). In addition, federal courts may create substantive law in those areas where the Constitution or Congress has recognized, either expressly or implicitly, the authority of federal courts to create substantive law. *See, General Engineering Corp. v. Martin Marietta Alumina,* 783 F.2d 352, 357 (3rd Cir.1986). For example, in *The Bremen, supra,* the Court sat in admiral-

ty, an area of law over which the Constitution vests original jurisdiction in the federal courts, and where the federal courts have acted as the primary agent in developing the law. *Id.* In *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court explicitly limited its approval of the *Bremen* rule to forum selection clauses implicating the Arbitration Act, 9 U.S.C. § 1 *et seq. Id.* The interpretation of forum selection clauses in commercial contracts is not an area of law that ordinarily requires federal courts to create substantive law. *Id.*

IT IS HEREBY ORDERED that defendant's motion to dismiss plaintiff's complaint for improper venue be, and the same hereby is, DENIED.[6]

### B. *RICO*

Plaintiff's amended complaint seeks an award of damages under RICO's civil liability provisions, alleging violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d).[7] Plaintiff alleges the defendants engaged in a "pattern of racketeering activity" through the commission of various acts of mail and wire fraud, extortion and interstate transportation of stolen property. Defendants have moved the court to dismiss plaintiff's RICO claim, asserting, *inter alia*, plaintiff has failed to establish a "pattern of racketeering activity."

■ A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). "Racketeering activity," in turn, includes any act indictable under cer-

tain enumerated federal statutes, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and interference with commerce, robbery or extortion (18 U.S.C. § 1951). 18 U.S.C. § 1961(1). It is not necessary to allege a defendant has been convicted of one of the enumerated offenses, commonly referred to as "predicate acts," in order to bring a civil RICO claim. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488–493, 105 S.Ct. 3275, 3280–3283, 87 L.Ed.2d 346 (1985).

The federal courts have struggled to develop a concrete definition regarding what constitutes a "pattern" for purposes of the RICO statute. Their efforts, unfortunately, "produced the widest and most persistent circuit split on an issue of federal law in recent memory." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 251, 109 S.Ct. 2893, 2906–2907, 106 L.Ed.2d 195 (1989) (Scalia, J., concurring).

In *H.J. Inc.* the Supreme Court attempted to resolve the split by endorsing a fact-

**6.** At first glance, the court's decision appears to conflict with the Ninth Circuit Court of Appeals' decision in *Manetti–Farrow, Inc. v. Gucci America, Inc., supra*. An exacting analysis, however, reveals the contrary is true.

In *Manetti–Farrow*, the parties' exclusive dealership agreement contained a clause designating Florence, Italy as the forum for resolution of any controversy "regarding interpretation or fulfillment" of the contract. The Ninth Circuit held "the federal procedural issues raised by forum selection clauses significantly outweigh the state interests, and the federal rule announced in *The Bremen* controls enforcement of forum clauses in diversity cases." 858 F.2d at 513. The holding, however, cannot be read in isolation of *The Bremen*.

In *The Bremen*, the Supreme Court, sitting in diversity, held a forum selection clause "is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. The Court added, "[A] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916, citing, *Boyd v. Grand Trunk W.R. Co.*, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949).

In the case *sub judice*, enforcement of the forum selection clause would contravene a strong public policy of the State of Montana. Furthermore, *Manetti–Farrow* is factually distin-

guishable from the present action. *Manetti–Farrow* involved a dealership agreement whereby Manetti–Farrow, a California corporation, became the exclusive distributor of certain Italian products. Accordingly, facilitation of international trade was an underlying policy concern in the court's decision affirming the validity of the forum selection clause. The Ninth Circuit failed, however, to discuss the very real *Erie* problem that arises in the domestic context when state and federal law conflict over the enforceability of forum selection clauses.

**7.** RICO is the acronym given to Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961–68. Although primarily a criminal statute designed to combat organized crime, RICO also contains a civil provision which permits recovery of treble damages. 18 U.S.C. § 1964(c). RICO renders civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the first three subsections of 18 U.S.C. § 1962, § 1962(d). *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232–233, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989).

specific "continuity plus relationship" test for determining the existence of a "pattern of racketeering activity."[8] The Court concluded the term "pattern", as used in RICO, requires a showing that (1) the racketeering predicate acts are related, *and* (2) that they amount to or pose a threat of continued criminal activity. 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original). Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901, *quoting,* 18 U.S.C. § 3575(e). Continuity, in turn, necessitates "the predicates themselves amount to, or ... otherwise constitute a threat of *continuing* racketeering activity." 492 U.S. at 240, 109 S.Ct. at 2901 (emphasis in original). Recognizing the difficulty in formulating a definitive test for continuity, the Supreme Court noted "[W]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc., supra,* 492 U.S. at 242, 109 S.Ct. at 2902.

Continuity, the Court held, "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241, 109 S.Ct. at 2901. A party "may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." 492 U.S. at 242, 109 S.Ct. at 2902. Alternatively, a party may establish open-ended continuity by proving "a specific threat of repetition extending indefinitely into the future" or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Olive Can Co., Inc. v. Martin,* 906 F.2d 1147, 1151 (7th Cir.1990), *quoting, H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902.

◼ In the case *sub judice,* plaintiff's amended complaint alleges the defendants devised and perpetrated a closed-ended,[9] single scheme to defraud the plaintiff. Plaintiff contends the scheme began in March, 1987, when defendants first contacted him regarding the cattle feeding agreement, and continued until April, 1989, when the cattle were removed from plaintiff's land. Plaintiff further alleges the scheme involved sixteen acts of mail fraud, more than forty acts of wire fraud, three acts of extortion and at least one act of

---

8. Justice Scalia, in a concurring opinion, criticized the majority's "continuity plus relationship" test, stating, "[T]his seems to me about as helpful to the conduct of their [the lower courts] affairs as 'life is a fountain.'" 492 U.S. at 252, 109 S.Ct. at 2907. Justice Scalia admitted, "[I]t is, however, unfair to be so critical of the Court's effort, because I would be unable to provide an interpretation of RICO that gives significantly more guidance concerning its application." *Id.* at 254–55, 109 S.Ct. at 2908. The concurring members of the Court suggested the vagueness of the RICO statute renders it constitutionally infirm:

> No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented.

*Id.* at 255–56, 109 S.Ct. at 2909.

9. Plaintiff's amended complaint also alleges an open-ended threat of continuing racketeering activity. Specifically, plaintiff contends the defendants' fraudulent conduct constitutes "a regular way of conducting [their] ongoing legitimate business," *H.J. Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902, thus threatening future racketeering activity. Plaintiff predicates his claim on allegations that defendants perpetrated similar schemes on other individuals. These allegations, however, lack the specificity needed to establish a distinct threat of continuing racketeering activity. In this court's opinion, plaintiff's conclusory allegations regarding defendants' related schemes fail to satisfy Fed. R.Civ.P. 9(b)'s requirement that averments of fraud be stated with particularity. *See, Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988) (dismissing RICO claims because predicate acts of mail and wire fraud were not plead with specificity required by Fed.R.Civ.P. 9(b)). Consequently, they cannot be relied upon to establish a continuing pattern of fraudulent acts. *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989).

interstate transportation of stolen goods. In response, defendants contend plaintiff's allegations fail to rise to the level of a "pattern of racketeering activity" sufficient to support a RICO claim.

In assessing the RICO pattern requirement, courts consider a range of factors, including (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Shields Enterprises, Inc. v. First Chicago Corp.*, 762 F.Supp. 1331, 1337 (N.D.Ill.1991) (citations omitted).[10] These factors are not exclusive and none of them is determinative. *Myers v. Finkle*, 758 F.Supp. 1102, 1113 (E.D.Va.1990). Analysis of these factors in the present action, however, demonstrates the absence of a RICO "pattern."

Plaintiff's amended complaint alleges a single fraudulent scheme[11] directed towards one victim and resulting in a single injury. Given the unity and narrow focus of the alleged scheme, plaintiff apparently relies on the first factor—the number and variety of predicate acts and the length of time over which they were committed—to establish a RICO pattern.

At first glance, the duration of the alleged scheme and the number of purported predicate acts appear compelling. However, the number of predicate acts are not, in and of themselves, determinative of the existence of a RICO pattern, especially when mail and wire fraud are alleged.

Mail and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts ... may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity. *U.S. Textiles, Inc., supra*, 911 F.2d at 1268, quoting, *Sutherland v. O'Malley*, 882 F.2d 1196, 1205 n. 8 (7th Cir.1989).

In the case *sub judice*, the court concludes the sheer number of predicate acts of mail and wire fraud identified by the plaintiff do not translate automatically into a pattern of racketeering. First, the alleged predicate acts are indeed numerous, but not of great variety. *see, Olive Can Co., supra*, 906 F.2d at 1151. Second, the court notes, without directly addressing the issue, a question exists as to whether plaintiff's allegations of mail and wire fraud have been plead with sufficient specificity. *see*, Fed.R.Civ.P. 9(b); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988). Finally, although plaintiff alleges the fraudulent scheme extended over a twenty-five month period, the scheme had a definite conclusion and posed no threat of continued criminal activity.[12]

The court further rejects plaintiff's implicit assertion that the time span over which the predicate acts were committed establishes the requisite continuity. The concept of "continuity" plays an important constraining role in the operation of the RICO statute. *Marshall–Silver Construction Co., Inc. v. Mendel*, 894 F.2d 593, 596

**10.** Subsequent to the Supreme Court's decision in *H.J. Inc.*, a number of circuits recognized the continued validity of these four factors in analyzing the existence of a RICO pattern. *See, Hartz v. Friedman*, 919 F.2d 469 (7th Cir.1990); *Marshall–Silver Const. Co., Inc. v. Mendel*, 894 F.2d 593 (3d Cir.1990); *Parcoil Corp. v. Nowsco Well Service Ltd.*, 887 F.2d 502 (4th Cir.1989).

**11.** Although the Court in *H.J. Inc.* held a plaintiff need not prove multiple schemes to establish a RICO pattern, the existence of only one scheme remains a factor, in conjunction with the other relevant factors, in determining the existence of a RICO "pattern." *Shields Enterprises, Inc., supra*, 762 F.Supp. at 1338, *citing, U.S. Textiles, Inc. v. Anheuser–Busch Companies,*

911 F.2d 1261 (7th Cir.1990). "While a RICO pattern can be established, in some circumstances, by proof of a single scheme, it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." *U.S. Textiles, Inc., supra*, 911 F.2d at 1269 (citations omitted).

**12.** As set forth previously, the court rejects plaintiff's contention regarding an open-ended threat of continuing racketeering activity. *See, supra*, note 9. Plaintiff has failed to establish either a "specific threat of repetition" or a showing that the predicate acts are part of the defendants' "regular way of doing business." *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902.

(3rd Cir.1990).[13] "If the extent of the threatened societal injury is deemed irrelevant and we are to focus solely on the period of time over which the predicate acts occurred or the period during which any threatened criminal activity would be likely to last, "continuity" will be present in criminal conduct that clearly does not pose a societal threat worthy of the draconian penalties and remedies available under RICO." *Id.* at 596–97.

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for a period of time. Given its "natural and common sense approach to RICO's pattern element," we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat. Moreover, if the Court in *H.J. Inc.* intended that the duration of the predicate acts or the threat arising therefrom should be determinative without reference to whether the societal threat was limited to a single, one time injury, we would not have expected the Court to eschew providing a specific standard in favor of a fact oriented, case-by-case development.

*Id.* at 597.

In enacting RICO, Congress did not intend to preempt and federalize the field of state business law. *HMK Corp. v. Walsey*, 828 F.2d 1071, 1076 (4th Cir.1987).

> In fact, a great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple individual instances of fraud, if one chose to do so. But to adopt such a characterization would transform "every such dispute ... [into] a cause of action under RICO...." Our precedents have not adopted an interpretation of the statute producing such a result.

*Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir.1988). "Congress chose the pattern requirement of § 1962(a) as the mechanism by which 'ordinary claims of fraud best left to the state common law of fraud' are distinguished from those activities of such a 'criminal dimension and degree' as to warrant the extraordinary remedies of RICO." *HMK Corp., supra*, 828 F.2d at 1076, *quoting, International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir.1987).

In this court's opinion, plaintiff has failed to establish the pattern of racketeering activity necessary to proceed under the federal RICO statute. If the pattern requirement has any force whatsoever, it is to prevent this type of commercial fraud/breach of contract claim from being transformed into a federal RICO claim. *Menasco, supra*, 886 F.2d at 685 (citations omitted). If the court were to recognize a RICO claim based on the narrow fraud

---

**13.** The Fourth Circuit, in *Menasco v. Wasserman*, 886 F.2d 681, 683 (4th Cir.1989), noted:

> The "pattern" requirement is more than incidental to the operation of the RICO statute. In providing a remedy of treble damages for injury "by reason of a violation of" RICO's substantive provisions, 18 U.S.C. § 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences. *See,* S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969), U.S.Code & Admin.News ("One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided under the pro-

> posed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense."); 116 Cong. Rec. 35193 (1970) (RICO "not aimed at isolated offender") (statement of Rep. Poff). The pattern requirement in section 1961(5) thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted.

alleged herein, the pattern requirement would be rendered meaningless. *Id.*[14]

Accordingly, for the reasons set forth herein, the court concludes defendants' motion to dismiss plaintiff's RICO claim be, and the same hereby is, GRANTED.

### C. *Personal Jurisdiction*

■ Defendants Frank H. Seckler and James Dardanes have moved the court, pursuant to Fed.R.Civ.P. 12(b), to dismiss the present action for lack of personal jurisdiction. Defendants contend, *inter alia,* the court lacks personal jurisdiction over them, as individuals, because their contacts with the plaintiff and the State of Montana were made "solely in their individual capacity" as agents or employees of Seckler Company, Inc. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is unpersuaded by defendants' argument in support of their position. Consequently, the court deems it appropriate to deny defendants' motion.

### CONCLUSION

For the reasons set forth herein, the court holds as follows:

(1) defendants' motions to dismiss plaintiff's complaint based upon improper venue are hereby DENIED;

(2) defendants' motions to dismiss plaintiff's RICO claim are hereby GRANTED; and

(3) defendants Frank H. Seckler and James Dardanes' motion to dismiss for lack of personal jurisdiction is hereby DENIED.

IT IS SO ORDERED.

---

**14.** A comparison of the present action with *H.J. Inc.* reveals the lack of continuing racketeering activity herein.

In *H.J. Inc.,* respondents Northwestern Bell, its officers, the Minnesota Public Utilities Commission, and others participated in a systematic rate hike scheme on a scale that dwarfs the present venture. The *H.J. Inc.* defendants' numerous predicate acts spanned at least six years. During that period, the defendants employed a variety of stratagems including cash payments to commissioners, offers of future employment, meals, parties, and airline, sporting, and entertainment tickets. Thousands of Northwestern Bell customers suffered long term, multiple, and repeated injuries. The scale on which racketeering is conducted may provide some indication of its ongoing nature. The number of victims, as well as the duration and magnitude of the scheme to defraud, plainly distinguishes *H.J. Inc.* from the instant case.

*Menasco, supra,* 886 F.2d at 684–85.