No. 97-496

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 326

KEYSTONE, INC., a Montana corporation,

Plaintiff and Appellant,

v.

TRIAD SYSTEMS CORPORATION,

a California corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John G. Crist (argued); Dorsey & Whitney LLP;

Billings, Montana

For Respondent:

Peter F. Habein (argued); Crowley, Haughey, Hanson,

Toole & Dietrich, P.L.L.P.; Billings, Montana

Argued: May 5, 1998

Submitted: June 23, 1998

Decided: December 30, 1998

No

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Keystone, Inc., filed in the District Court of the Thirteenth Judicial District in Yellowstone County a complaint against Triad Systems Corp. for alleged breach of contract and other duties. In accordance with one of the contract provisions, Triad demanded that the parties arbitrate their dispute in California. Keystone filed a motion to compel arbitration in Montana, and Triad filed a cross-motion to compel arbitration in California. The District Court denied Keystone's motion and ordered the parties to submit to arbitration in California. Keystone appeals. We reverse the order of the District Court.**

**¶2. The sole issue on appeal is whether the contract provision which requires arbitration in California is void because it violates § 28-2-708, MCA, or § 27-5-323, MCA.**

## FACTUAL BACKGROUND

**¶3. Triad Systems Corporation is a California corporation engaged in the sale of computer hardware, software, and support systems. Keystone, Inc., is a Montana corporation engaged in the distribution of automotive parts and supplies in Billings, Montana.**

**¶4. In November 1994, Keystone and Triad entered into a contract by which Keystone agreed to purchase a computer system from Triad for approximately $250,000. The system allegedly failed to work, and Triad was unable to correct the problems to Keystone's satisfaction. Keystone requested that Triad take back its computers and that it refund Keystone's payment. Triad refused.**

**¶5. In November 1996, Keystone filed a complaint against Triad in the District Court**

in which it alleged breach of warranty, breach of contract, negligence, and negligent misrepresentation. In response, Triad contended that pursuant to the parties' contract, they were required to arbitrate any dispute between them before the American Arbitration Association (AAA) in San Francisco, California. Keystone notified Triad that it was willing to arbitrate the matter before the AAA, but only in Montana.

¶6. In reliance on § 28-2-708, MCA, Keystone moved the District Court to compel arbitration in Montana. Triad filed a cross-motion to compel arbitration in California in accordance with the terms of the contract. The District Court reasoned that § 28-2-708, MCA, was preempted by the Federal Arbitration Act (FAA), and that as such, its only choice was to enforce the parties' agreement, which called for the parties to arbitrate in California. Accordingly, it granted Triad's motion to compel arbitration in California.

## DISCUSSION

¶7. Is the contract provision which requires arbitration in California void because it violates § 28-2-708, MCA, or § 27-5-323, MCA?

¶8. We review a district court's conclusion of law to determine whether it is correct. *See Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; *see also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

¶9. At the outset, it is necessary to discuss whether Montana law is even applicable to our interpretation of this contract. The terms of the contract provide that it "will be governed by and construed in accordance with the laws of the United States and the State of California." Triad contends that because the parties made a valid agreement to interpret the contract according to the law of California, the question of how Montana law affects the parties' rights is irrelevant. Keystone acknowledges the contract's choice of law provision. However, it contends that this Court's decision in *Casarotto v. Lombardi* (1994), 268 Mont. 369, 886 P.2d 931, *rev'd on other grounds*, *Doctor's Assocs., Inc. v. Casarotto* (1996), 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902, as it pertains to the validity of choice of law provisions, governs this case and resolves the question so that Montana law should apply to our interpretation of the

**contract.**

**¶10. In *Casarotto*, we held that the Restatement (Second) of Conflict of Laws § 187(2) (1971) applies when we are faced with the question of whether to give effect to a contractual choice of law by the parties. The relevant portion of § 187(2) states:**

The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . .

. . . .

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

We rely on § 188 to determine which state has a materially greater interest in the particular contract issue and which state's law would apply in the absence of an effective choice of law by the parties. The factors from § 188 that we consider include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2). Based on the facts in *Casarotto*, we concluded that: (1) Montana had a materially greater interest in the particular contract issue than Connecticut, the state whose law the parties had contracted to apply; (2) Montana law would apply absent an effective choice of law by the parties; and (3) application of Connecticut law would be contrary to a fundamental public policy of Montana. *See Casarotto*, 268 Mont. at 375-77, 886 P.2d at 935-36.

No

¶11. Triad has raised no challenge to our analysis in *Casarotto* nor made any suggestion that those same principles should not govern when a choice of law question arises. Moreover, the U.S. Supreme Court's opinion reversing the *Casarotto* decision did not address that part of the opinion which dealt with choice of law. Therefore, that part of our decision is still valid precedent.

¶12. The record in this case suggests that the parties eventually entered into their contract after many months of negotiation in which officials from both companies traveled back and forth between California and Montana. Most significantly, however, the contract was performed almost exclusively in Montana. Triad developed the computer system to coordinate Keystone's distribution of auto parts across Montana, installed the system in Billings, and trained Keystone employees in Montana to use the system. Furthermore, the subject matter of the contract is located in Montana. We conclude, therefore, that Montana has a materially greater interest in the contract issue than California, and that its law would apply in the absence of an effective choice of law provision.

¶13. The next issue is whether an application of California law would be contrary to a fundamental public policy of Montana. In both *Rindal v. Seckler* (D. Mont. 1992), 786 F. Supp. 890, 894, and *State ex rel. Polaris Industries, Inc. v. District Court* (1985), 215 Mont. 110, 695 P.2d 471, the Federal District Court and this Court, respectively, noted strong public policy considerations in Montana for voiding choice of forum provisions. Although those cases involved contracts generally (as will be discussed), those same public policy considerations apply to choice of forum provisions in arbitration contracts.

¶14. Therefore, to the extent that the application of California law would evade Montana's public policy regarding choice of forum provisions in contracts, we hold that the provision in this contract requiring the application of California law is void. (1)

¶15. The parties agree on most relevant facts in this case. They both acknowledge that they executed a contract that requires that all disputes between them be submitted to arbitration before the AAA in San Francisco, California. They further agree that regardless of where their dispute is resolved, it should be settled by arbitration pursuant to the rules of the AAA.

¶16. The basis of the parties' disagreement was the issue of whether § 28-2-708, MCA, applies to the arbitration provision in their contract and renders void the forum selection clause that requires the parties to arbitrate in California. Section 28-2-708, MCA, provides:

Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals or which limits the time within which he may thus enforce his rights is void. This section does not affect the validity of an agreement enforceable under Title 27, Chapter 5.[(2)]

Keystone contends that, based on the statute, any forum selection clause that would require Montana residents to resolve disputes outside Montana when the usual procedure would be to resolve the dispute in Montana, is void, and that the statute applies to arbitration provisions, as well as other contracts. Triad, on the other hand, asserts that the statute does not apply to arbitration agreements. In addition to the preemption position taken by the District Court, Triad relies on what it contends is an express exclusion in the last sentence of the statute and on its assumption that arbitration is not a usual proceeding in the ordinary tribunals.

¶17. Section 28-2-708, MCA, has historically been applied for two distinct purposes: (1) to protect Montana residents from having to litigate outside of Montana; and (2) to invalidate pre-dispute arbitration agreements.

¶18. The first purpose reflects the fundamental public policy of this state to protect the "substantive rights of Montana residents to seek redress in the courts of [Montana]." *Rindal*, 786 F. Supp. at 894; *see also Polaris*, 215 Mont. 110, 695 P.2d 471. Accordingly, § 28-2-708, MCA, has been applied to invalidate forum selection clauses that would have the effect of forcing Montana residents to litigate disputes outside of Montana. *See Rindal*, 786 F. Supp. 890; *Polaris,* 215 Mont. 110, 695 P.2d 471. *Rindal* and *Polaris* involved contracts that required all disputes to be resolved through the courts of Denver, Colorado, and Minneapolis, Minnesota, respectively. In each case, the forum selection clause was held to constitute "an improper restraint upon the [party's] exercise of its rights to enforce the . . . contract by a 'usual proceeding' in the 'ordinary tribunals' of Montana." *Rindal*, 786 F. Supp. at 894 (citing *Polaris*, 215 Mont. at 111, 695 P.2d at 472).

¶19. Although neither *Rindal* nor *Polaris* dealt with an arbitration agreement,

Keystone maintains that the interest which § 28-2-708, MCA, was intended to protect, as applied in those cases, is as applicable to arbitration provisions as to contracts in general and, therefore, that we should apply the statute equally in the arbitration context to avoid anomalous results.

¶20. We conclude that whether or not § 28-2-708, MCA, pertains to arbitration contracts, § 27-5-323, MCA, provides the same protection in that context. That statute, which pertains specifically to arbitration agreements, provides in relevant part as follows:

No agreement concerning venue involving a resident of this state is valid unless the agreement requires that arbitration occur within the state of Montana. This requirement may only be waived upon the advice of counsel as evidenced by counsel's signature thereto.

¶21. There is no indication from the face of the contract at issue that the right to have disputes arbitrated in Montana was waived based on the advice of counsel.

¶22. Accordingly, we hold that the provision at issue which requires that a Montana resident arbitrate disputes related to a contract to be performed in Montana at a location outside Montana is void because it violates Montana law.

¶23. Our only remaining inquiry is whether Montana's controlling statutory law is preempted by the FAA which unquestionably applies and provides, in relevant part:

A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1994). The FAA generally preempts state law which restricts the application of arbitration agreements. *See Doctor's Associates, Inc. v. Casarotto* (1996), 517 U.S. 681, 686-87, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 908-09; *Scherk v. Alberto-Culver Co.* (1974), 417 U.S. 506, 510-11, 94 S. Ct. 2449, 2453, 41 L. Ed. 2d 270, 276. However,

when a state law does not conflict with the FAA so as to frustrate the objectives of Congress, it is not necessarily preempted. *See Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Jr. Univ.* (1989), 489 U.S. 468, 477-78, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488, 499. State law may be applied in spite of the FAA's preemptive effect "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas* (1987), 482 U.S. 483, 492-93 n.9, 107 S. Ct. 2520, 2527, 96 L. Ed. 2d 426, 437; *see also Casarotto*, 517 U.S. at 686-87, 116 S. Ct. at 1656, 134 L. Ed. 2d at 909.

**¶24. Keystone contends that § 28-2-708, MCA, governs the enforceability of contracts generally and, by logical extension, argues that applying the same restriction to arbitration agreements does not frustrate or conflict with the FAA. Therefore, it contends that the FAA should not preempt the statutes in question. Triad, like the District Court, relies on the general preemptive power of the FAA to avoid the effect of Montana's statutes. Upon review of the relevant statutes and case law, however, we conclude that the FAA does not preempt § 27-5-323, MCA.**

**¶25. In *Casarotto*, the U.S. Supreme Court clarified the kind of state laws which are preempted by the FAA. It stated:**

Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." Montana's § 27-5-114(4) directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act.

. . . .

Applying § 27-5-114(4) here . . . would not enforce the arbitration clause in the contract between DAI and Casarotto; instead, Montana's first-page notice requirement would invalidate the clause. The "goals and policies" of the FAA, this Court's precedent indicates, are antithetical to threshold limitations placed specifically and solely on arbitration provisions. Section 2 "mandate[s] the enforcement of arbitration agreements," "save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 27-5-114(4) of Montana's law places arbitration agreements in a class apart from "any contract," and singularly limits their validity. The State's prescription is thus inconsonant with, and is therefore preempted by, the federal law.

*Casarotto*, 517 U.S. at 687-88, 116 S. Ct. at 1656-57, 134 L. Ed. 2d at 909-10 (citations omitted). Based upon this language and an earlier reference in the Supreme Court's opinion, we read Casarotto to stand for the proposition that a state law may not "place arbitration clauses on an unequal 'footing'" from general contract provisions. Casarotto, 517 U.S. at 686, 116 S. Ct. at 1655, 134 L. Ed. 2d at 908 (quoting Allied-Bruce Terminix Cos., Inc. v. Dobson (1995), 513 U.S. 265, 281, 115 S. Ct. 834, 843, 130 L. Ed. 2d 753, 769).

¶26. As we stated above, § 28-2-708, MCA, invalidates choice of forum provisions in contracts generally. Section 27-5-323, MCA, does the same to arbitration agreements. Montana law, therefore, does not distinguish between forum selection clauses which are part of contracts generally and forum selection clauses found in agreements to arbitrate. Such a distinction, if one existed, would certainly manifest the kind of unequal treatment that *Casarotto* prohibits. The lack of such a distinction is evidence that the statute does not conflict with the FAA.

¶27. We are further persuaded that Montana's statutes are consistent with the FAA because neither statute nullifies either party's obligation to arbitrate their dispute. Rather, they preserve the obligation to arbitrate and constitute no more of an intrusion than on any other general contract entered into in this State. That ultimately distinguishes this case from those cases relied on by Triad in which application of the respective state laws invalidated altogether the parties' agreements to arbitrate. *See Allied-Bruce*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753; *Scherk*, 417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270; *see also Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902.

¶28. The mere fact that in this case the statutes limit in part the enforceability of the agreement and nullify an agreement to resolve the parties' disputes in California does not create a conflict with the purpose of the FAA.

¶29. Accordingly, we hold that neither § 28-2-708, MCA, nor § 27-5-323, MCA, are preempted by the FAA. In addition, we hold that the combined effect of these statutes, as applied to the arbitration provision in this case, invalidates only that portion of the agreement which requires Keystone to arbitrate the dispute outside of Montana. We reverse the order of the District Court that requires the parties to arbitrate in California, and order that arbitration occur in Montana.

**¶30. This case is remanded to the District Court for further proceedings consistent with this opinion.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

1. [1]We draw no conclusion about the applicability of California law to any other aspect of the parties' contractual obligations since no other issue is before us.

2. [2]Title 27, Chapter 5, of the Montana Code Annotated includes the Montana Uniform Arbitration Act.