JUSTICE TRIEWEILER
delivered the Opinion of the Court.
Plaintiffs Paul and Pamela Casarotto filed this suit in the District Court for the Eighth Judicial District in Cascade County to recover damages which they claim were caused by the defendants’ breach of contract and tortious conduct. Defendants Nick Lombardi and Doctor’s Associates, Inc. (DAI), moved the District Court for an order dismissing plaintiffs’ complaint, or in the alternative, staying further *371 judicial proceedings pending arbitration of plaintiffs’ claims pursuant to a provision in DATs franchise agreement with plaintiffs which required that disputes “arising out of or relating to” that contract be settled by arbitration. The District Court granted defendants’motion, and ordered that further judicial proceedings be stayed until arbitration proceedings were completed in accordance with the terms of the parties’ agreement. Plaintiffs appeal from that order. We reverse the order of the District Court.
The issues raised on appeal are:
1. Based on conflict of law principles, is the franchise agreement entered into between the Casarottos and DAI governed by Connecticut law or Montana law?
2. If the contract is governed by Montana law, is the notice requirement in § 27-5-114(4), MCA, of Montana’s Uniform Arbitration Act, preempted by the Federal Arbitration Act found at 9 U.S.C. §§ 1-15 (1988)?

FACTUAL BACKGROUND

On October 29, 1992, Paul and Pamela Casarotto filed an amended complaint naming Doctor’s Associates, Inc., and Nick Lombardi as defendants. For purposes of our review of the District Court’s order, we presume the facts alleged in the complaint to be true.
DAI is a Connecticut corporation which owns Subway Sandwich Shop franchises, and Lombardi is their development agent in Montana. The Casarottos entered into a franchise agreement with DAI which allowed them to open a Subway Sandwich Shop in Great Falls, Montana. However, they were told by Lombardi that their first choice for a location in Great Falls was unavailable.
According to their complaint, the Casarottos agreed to open a shop at a less desirable location, based on a verbal agreement with Lombardi that when their preferred location became available, they would have the exclusive right to open a store at that location. Contrary to that agreement, the preferred location was subsequently awarded by Lombardi and DAI to another franchisee. As a result, the Casarottos’ business suffered irreparably, and they lost their business, along with the collateral which secured their SBA loan.
This action is based on the Casarottos’ allegation that Lombardi and DAI breached their agreement with the Casarottos, defrauded them, breached the covenant of good faith and fair dealing, and engaged in other tortious conduct, all of which directly caused the Casarottos loss of business and the resulting damage.
*372 DATs franchise agreement with the Casarottos was executed on April 25, 1988. There was no indication on the first page of the contract that it was subject to arbitration. However, paragraph 10(c) of the contract, found on page 9, included the following provision:
Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrators) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be born equally by the parties.
On January 29,1993, DAI moved the District Court to dismiss the Casarottos’ complaint, or at least stay fux'ther judicial proceedings, pending arbitration pursuant to paragraph 10(c) of the franchise agreement. DAI alleged that the franchise agreement affected interstate commerce, and therefore, was subject to the Federal Arbitration Act found at 9 U.S.C. §§ 1-15 (1988). They sought a stay of proceedings pursuant to § 3 of that Act, which provides in relevant part that:
If any suit or proceeding be brought ixi any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....
DAI claimed that Montana law could not be raised as a bar to enforcement of the arbitration provision for two reasons: First, the contract specifically called for the application of Connecticut law; and second, Montana law was preempted by the Federal Arbitration Act.
The Casarottos opposed DATs motion on the grounds that Montana law applied, in spite of the choice of law provision in the contract, and that based on § 27-5-114(4), MCA, the contract’s arbitration provision was unenforceable because DAI had not provided notice on the first page of the agreement that the contract was subject to arbitration.
*373 On June 2,1993, the District Court issued its order granting DATs motion to stay further judicial proceedings pursuant to 9 U.S.C. § 3. The order was made applicable to both DAI and Lombardi, but not to other named defendants who were not parties to the franchise agreement and whose alleged conduct raises other issues. On July 8,1993, the District Court issued an order pursuant to Rule 54(b), M.R.Civ.R, certifying its June 2 order as final for purposes of appeal. The Casarottos appeal from that order.

ISSUE 1

Based on conflict of law principles, is the franchise agreement entered into between the Casarottos and DAI governed by Connecticut law or Montana law?
Paragraph 12 of the franchise agreement entered into between the parties provides as follows: “This agreement shall be governed by and construed in accordance with the laws of the State of Connecticut and contains the entire understanding of the parties.” DAI contends that, therefore, Connecticut law governs our interpretation of the contract and that since Connecticut law is identical to the Federal Arbitration Act see Conn. Gen. Stat. § 52-409 (1993), conspicuous notice that the contract was subject to arbitration was not required and we need not concern ourselves with the issue of whether Montana law is preempted.
The Casarottos respond that the issue of whether to apply Connecticut or Montana law involves a conflict of law issue and that the answer can be found in our prior decisions. We agree.
In Emerson v. Boyd (1991), 247 Mont. 241, 805 P.2d 587, we cited with approval the Ninth Circuit’s decision in R. J. Williams Co. v. Fort Belknap Housing Authority (9th Cir. 1983), 719 F.2d 979, which adopted the criteria established in Restatement (Second) of Conflict of Laws § 188 (1971) to determine which jurisdiction’s laws apply to a contract where no choice of law is provided for in the contract. Section 188 provides as follows:
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the context to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
*374 (b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contracts are to be evaluated according to their relative importance with respect to the particular issue.
(3)If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.
In this case, there is a choice of law provision in the parties’ contract. The question is whether it was an “effective” choice. We recently held in Youngblood v. American States Ins. Co. (1993), 262 Mont. 391, 394, 866 P.2d 203, 205, that this State’s public policy will ultimately determine whether choice of law provisions in contracts are “effective.” In that case, we stated:
Here, the general policy language in the insurance contract requires American States to pay whatever damages are required in Montana; that is, the contract is to be performed in Montana. Therefore, unless a contract term provides otherwise, Kemp [v. Allstate Ins. Co. (1979), 183 Mont. 526, 601 P.2d 20] and § 28-3-102, MCA, require the application of Montana law because the contract was to be ‘performed’ in Montana. In this case, however, the insurance contract contains a choice of law provision which requires the application of Oregon subrogation law. ...
... [T]he choice of law provision will be enforced unless enforcement of the contract provision requiring application of Oregon law as regards subrogation of medical payments violates Montana’s public policy or is against good morals.
Youngblood, 866 P.2d at 205.
Based on our conclusion in that case that subrogation of medical payment benefits was contrary to our public policy, we held that:
[T]he choice of law provision in the insurance contract would result in medical payment subrogation under Oregon law. Because such subrogation violates Montana’s public policy, that term of the insurance contract at issue here is not enforceable.
Youngblood, 866 P.2d at 208.
Restatement (Second) of Conflict of Laws § 187(2) (1971) is consistent with our decision in Youngblood, and expands upon the factors *375 to be considered under the circumstances in this case. It provides that:
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties’ choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
Adopting § 187, then, as our guide, we first look to § 188 to determine whether Montana law would be applicable absent an “effective” choice of law by the parties.
According to the affidavit of Paul Casarotto filed in opposition to DATs motion to dismiss, he executed the contract in neither Connecticut nor Montana. It was executed while he was traveling in New York. However, it appears from that same affidavit, and from the allegations in the complaint, that original negotiations were conducted by him in Great Falls, the contract was to be performed in Great Falls, the subject matter of the contract (the Subway Sandwich Shop) was located in Great Falls, and that he and Pamela Casarotto resided in Great Falls at the time that the contract was executed. The only connection to Connecticut was that DAI was incorporated in that state and apparently had its home office in that state at the time of the parties’ agreement. We conclude that based upon the application of the criteria set forth in § 188, and our prior decision in Emerson, Montana has a materially greater interest than Connecticut in the contract issue that is presented, and that absent an “effective” choice of law by the parties, Montana law would apply.
Our remaining inquiry, then, is whether application of Connecticut law would be contrary to a fundamental policy of this State by eliminating the requirement that notice be provided when a contract is subject to arbitration.
In Trammel v. Brotherhood of Locomotive Firemen and Enginemen (1953), 126 Mont. 400, 409, 253 P.2d 329, 334, we held that the public policy of a state is established by its express legislative enactments. *376 Here, the legislative history for § 27-5-114(4), MCA, makes clear that the legislative committee members considering adoption of the Uniform Arbitration Act had two primary concerns. First, they did not want Montanans to waive their constitutional right of access to Montana’s courts unknowingly, and second, they were concerned about Montanans being compelled to arbitrate disputes at distant locations beyond the borders of our State.
The facts in this case, and our recent decision in another case, justify those concerns.
Regardless of the amount in controversy between these parties, the arbitration clause in the Subway Sandwich Shop Franchise Agreement requires that the Casarottos travel thousands of miles to Connecticut to have their dispute arbitrated. Furthermore, it requires that they share equally in the expense of arbitration, regardless of the merits of their claim. Presumably, that expense could be substantial, since under the Commercial Arbitration Rules of the American Arbitration Association (1992), those expenses would, at a minimum, include: the arbitrator’s fees and travel expenses, the cost of witnesses chosen by the arbitrator, the American Arbitration Association’s administrative charges, and a filing fee of up to $4000, depending on the amount in controversy. For a proceeding involving multiple arbitrators, the administrative fee alone, for which the Casarottos would be responsible, is $150 a day. In addition, since the contract called for the application of Connecticut law, the Casarottos would be required to retain the services of a Connecticut attorney.
In spite of the expense set forth above, the procedural safeguards which have been established in Montana to assure the reliability of the outcome in dispute resolutions are absent in an arbitration proceeding. The extent of pretrial discovery is within the sole discretion of the arbitrator and the rules of evidence are not applicable. The arbitrator does not have to follow any law, and there does not have to be a factual basis for the arbitrator’s decision. See May v. First National Pawn Brokers, Ltd. (Mont. 1994), 887 P.2d 185, 51 St.Rep. 1367.
Based upon the determination by the Legislature of this State that the citizens of this State are at least entitled to notice before entering into an agreement which will limit their future resolution of disputes to a procedure as potentially inconvenient, expensive, and devoid of procedural safeguards as the one provided for by the rules of the American Arbitration Association, and the terms of this contract, we conclude that the notice requirement of § 27-5-114, MCA, does estab *377 lish a fundamental public policy in Montana, and that the application of Connecticut law would be contrary to that policy. Therefore, we conclude that the law of Montana governs the franchise agreement entered into between the Casarottos and Doctor’s Associates, Inc.

ISSUE 2

If the contract is governed by Montana law, is the notice requirement in § 27-5-114(4), MCA, of Montana’s Uniform Arbitration Act, preempted by the Federal Arbitration Act found at 9 U.S.C. §§ 1-15 (1988)?
DAI contends that even if Montana law is applicable, § 27-5-114(4), MCA, is preempted by the Federal Arbitration Act because it would void an otherwise enforceable arbitration agreement. In support of its argument, DAI relies on U.S. Supreme Court decisions in Perry v. Thomas (1987), 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426, Southland Corp. v. Keating (1984), 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1, and Moses H. Cone Memorial Hospital v. Mercury Construction Corp. (1983), 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765. These cases have been referred to as “[a] trilogy of United States Supreme Court cases” which “developed the federal policy favoring arbitration and the principle that the FAA is substantive law enacted pursuant to Congress’s commerce powers that preempts contrary state provisions.” David R Pierce, The Federal Arbitration Act: Conflicting Interpretations of its Scope 61 Cinn. L. Rev. 623, 630 (1992). From this trilogy, Southland and Perry appear to be closest on point and warrant some discussion.
Southland Corporation was the owner and franchisor of 7-Eleven Convenience Stores. Its standard franchise agreements, like DATs included an arbitration provision. Southland was sued in California by several of its franchisees, based on claims which included violations of the disclosure requirements of the California Franchise Investment Law, Cal. Corp. Code § 31000, et seq. (West 1977). The California Supreme Court held that the Franchise Investment Law required judicial consideration of claims brought under that statute, and therefore, held that arbitration could not be compelled. The U.S. Supreme Court disagreed, and held that:
In creating a substantive rule applicable in state as well federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We hold that § 31512 of the California Franchise Investment Law violates the Supremacy Clause.
*378 Southland, 465 U.S. at 16, 104 S.Ct. at 861 (footnotes omitted).
In Perry, the Supreme Court was called upon to reconcile 9 U.S.C. § 2 which mandates enforcement of arbitration agreements, with § 229 of the California Labor Code, “which provides that actions for the collection of wages may be maintained ‘without regard to the existence of any private agreement to arbitrate.’” Perry, 465 U.S. at 484, 107 S.Ct. at 2523 (quoting Cal. Lab. Code § 229 (West 1971)). In that case, Kenneth Thomas sued his former employer for commissions he claimed were due for the sale of securities. His employer sought to stay the proceedings pursuant to §§ 2 and 4 of the Federal Arbitration Act, based on the arbitration provision found in Thomas’s application for employment. Perry, 465 U.S. at 484-85, 107 S.Ct. at 2522-23. In an opinion affirmed by the California Court of Appeals and the California Supreme Court, the California Superior Court denied the motion to compel arbitration. On appeal, the U.S. Supreme Court held that § 2 of the FAA reflected a strong national policy favoring arbitration agreements, notwithstanding “state substantive or procedural policies to the contrary.” Perry, 482 U.S. at 489, 107 S.Ct. at 2525. Citing its decision in Southland, the Court held that:
“Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.” Id. [465 U.S.] at 16 [104 S.Ct. at 858] (footnote omitted). Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable “upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. ‘We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.” Keating, supra, 465 U.S. at 11 [104 S.Ct. at 858].
Perry, 482 U.S. at 489-90, 107 S.Ct. at 2525.
As additional authority, DAI cites to our own previous decisions which have enforced arbitration agreements in Montana based on Southland and Perry. See Downey v. Christensen (1992), 251 Mont. 386, 825 P.2d 557; Vukasin v. D.A. Davidson & Co. (1990), 241 Mont. 126, 785 P.2d 713; William Gibson, Jr., Inc. v. James Graff Communications (1989), 239 Mont. 335, 780 P.2d 1131; Larsen v. Opie (1989), 237 Mont. 108, 771 P.2d 977; Passage v. Prudential-Bache Securities, Inc. (1986), 223 Mont. 60, 727 P.2d 1298.
The Casarottos, however, contend that Southland and Perry must be considered in light of the Supreme Court’s more recent decision in Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford *379 Junior University (1989), 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488, and that our prior arbitration decisions did not deal with the enforceability of arbitration agreements which violated Montana’s statutory law. We agree.
In Volt, the parties entered into a construction contract which contained an agreement to arbitrate all disputes between the parties relating to the contract. The contract also provided that it would be governed by the law in the state where the project was located. Volt, 489 U.S. at 470, 109 S.Ct. at 1251.
As a result of a contract dispute between the parties, Stanford filed an action in California Superior Court naming Volt and two other companies involved in the construction project. Volt petitioned the Superior Court to compel arbitration of the dispute. However, the California Arbitration Act found at Cal. Civ. Proc. Code § 1280, et seq. (West 1982), contained a provision allowing the court to stay arbitration pending resolution of related litigation. On that basis, the Superior Court denied Volt’s motion to compel arbitration, and instead, stayed arbitration proceedings pending outcome of the litigation. The California Court of Appeals affirmed that decision, and the California Supreme Court denied Volt’s petition for discretionary review. The U.S. Supreme Court granted review and affirmed the decision of the California courts. Volt, 489 U.S. at 471-73, 109 S.Ct. at 1251-52.
On appeal, the Supreme Court considered Volt’s argument that California’s arbitration laws were preempted by the Federal Arbitration Act. In its analysis of the preemption issue, the Supreme Court stated that:
The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law — that is, to the extent that it “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Hines v. Davidowitz, 312 U.S. 52, 67 [61 S.Ct. 399, 404 85 L.Ed.2d 581] (1941). The question before us, therefore, is whether application of Cal.Civ.Proc. Code Ann. § 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself, would undermine the goals and policies of the FAA. We conclude that it would not.
Volt, 489 U.S. at 477-78, 109 S.Ct. at 1255 (citation omitted; emphasis added).
*380 The Supreme Court explained that the purpose of the Federal Arbitration Act was to enforce lawful agreements entered into by the parties, and not to impose arbitration on the parties involuntarily. It noted that in this case the parties’ agreement was to be bound by the arbitration rules from California. Therefore, it held that:
Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to “rigorously enforce” such agreements according to their terms, see [Dean Witter Reynolds, Inc. v. ]Byrd, [470 U.S. 213] at 221, [105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)], we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.
Volt, 489 U.S. at 479, 109 S.Ct. at 1256.
While the Court in Volt applied state laws that had been chosen by the parties in their contract, and this case involves state law which is applied pursuant to conflict of law principles, it has been observed that:
The real significance of the Volt decision is not in the Court’s holding, but rather in what the Court failed to hold. For example, the Court found no preemption of the California arbitration law by the FAA. Instead, the Court merely stated that Congress did not intend that the FAA occupy the entire field of arbitration law. Thus, enforcing the California law was merely a procedural issue and did not frustrate the policy behind the FAA of enforcing the agreement.
David P. Pierce, The Federal Arbitration Act: Conflicting Interpretations of its Scope 61 Cinn. L. Rev. 623, 635 (1992) (footnotes omitted).
Section 2 of 9 U.S.C. provides that:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
(Emphasis added.)
*381 Based upon the Supreme Court’s decision in Volt, we conclude that the nature of our inquiry is whether Montana’s notice requirement found at § 27-5-114(4), MCA, would “undermine the goals and policies of the FAA.” We conclude that it does not.
DAI relies on decisions in Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (2d Cir. 1991), 923 F.2d 245, Securities Industry Ass’n v. Connolly (1st Cir. 1989), 883 F.2d 1114, Webb v. R. Rowland & Co., Inc. (8th Cir. 1986), 800 F.2d 803, and Bunge Corp. v. Perryville Feed & Produce, Inc. (Mo. 1985), 685 S.W.2d 837, in support of its argument that notice provisions are preempted by federal law.
The Casarottos, on the other hand, rely on decisions in American Physicians v. Port Lavaca Clinic (Tex. Ct. App. 1992), 843 S.W.2d 675, and Albright v. Edward D. Jones & Co. (Ind. Ct. App. 1991), 571 N.E.2d 1329, for the principle that since Volt, other courts have held that notice provisions in state arbitration laws are not preempted by the Federal Arbitration Act.
However, the cases cited by the parties either precede the Supreme Court’s decision in Volt, or contain little or no reference to the Volt decision. We conclude that none are persuasive, and we must rely on our own analysis of whether Montana’s notice requirement undermines the goals and policies of the FAA.
Our conclusion that Montana’s notice requirement does not undermine the policies of the FAA is based on the Supreme Court’s conclusion that it was never Congress’s intent when it enacted the FAA to preempt the entire field of arbitration, and its further conclusion that the FAA does not require parties to arbitrate when they have not agreed to do so. That Court held that the purpose of the FAA is simply to enforce arbitration agreements into which parties had entered, and acknowledged that the interpretation of contracts is ordinarily a question of state law. Volt, 489 U.S. at 474, 109 S.Ct. at 1253.
Presumably, therefore, the Supreme Court would not find it a threat to the policies of the Federal Arbitration Act for a state to require that before arbitration agreements are enforceable, they be entered knowingly. To hold otherwise would be to infer that arbitration is so onerous as a means of dispute resolution that it can only be foisted upon the uninformed. That would be inconsistent with the conclusion that the parties to the contract are free to decide how their disputes should be resolved.
Montana’s notice requirement does not preclude parties from knowingly entering into arbitration agreements, nor do our courts *382 decline to enforce arbitration agreements which are entered into knowingly.
Therefore, we conclude that Montana’s notice statute found at § 27-5-114(4), MCA, would not undermine the goals and policies of the FAA, and is not preempted by 9 U.S.C. § 2 (1988).
Because the agreement of the parties in this case did not comply with Montana’s statutory notice requirement, it is not subject to arbitration, according to the law of Montana. The District Court’s order dated June 2, 1993, is, therefore, reversed, and this case is remanded to the District Court for further proceedings consistent with this opinion.
JUSTICES HARRISON, HUNT and NELSON concur.