James VAN GUNDY, Plaintiff,

v.

P.T. FREEPORT INDONESIA, a/k/a
Copper Overseas Service Co.,
Defendant.

No. CV–98–003–GF–PGH.

United States District Court,
D. Montana,
Great Falls Division.

May 3, 1999.

Danna Jackson, Marra, Wenz, Johnson & Hopkins, P.C., Great Falls, MT, for plaintiff.

Ernest R. Malone, Jr., Robert B. Worley, Carmen M. Shindala, Kullman, Inman, Bee, Downing & Banta, New Orleans, LA, Stephen C. Mackey, Donald D. Sommerfeld, Towe, Ball, Enright & Mackey, Billings, MT, for Defendants.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiff, James Van Gundy ("Van Gundy"), instituted the above-entitled action against defendant P.T. Freeport Indonesia, a/k/a Copper Overseas Service Co. ("Freeport"), alleging Freeport discharged him in violation of Montana's Wrongful

Discharge From Employment Act, Mont. Code Ann. §§ 39–2–901, *et seq.* ("WDEA"). Freeport invokes the diversity jurisdiction of this court pursuant to 28 U.S.C. § 1332. Presently before the court is Freeport's motion for summary judgment. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

## BACKGROUND

Freeport is a mining company, incorporated in Delaware, with its principal place of business in Indonesia. Freeport's operations in Indonesia include copper mines and other facilities for processing copper ore. Freeport maintains offices in New Orleans. Louisiana. where it recruits prospective employees. At times pertinent to this matter. Van Gundy was a resident of Belt, Montana.

In 1994, Van Gundy submitted an application for employment with Freeport. In response to the application, Freeport invited Van Gundy to interview in New Orleans. The interview occurred in November of 1994. Following the interview, Freeport offered Van Gundy employment as an Ore Flow Superintendent at Freeport's copper mine in Iran Jaya, Indonesia. The offer was communicated to Van Gundy, by phone, at his home in Belt in December of 1994.[1]

Upon receipt of the offer, Van Gundy completed a pre-employment physical examination and traveled to New Orleans to further discuss Freeport's employment offer. While in New Orleans, Van Gundy received the following letter from Freeport which fully described the terms of Freeport's offer. Included in the offer was a choice of law provision which stated that all disputes arising out of the employment relationship would be governed by Louisiana law.

Dear Mr. Van Gundy:

I am pleased to offer you employment initially as Ore Flow Superintendent, on behalf of Freeport Overseas Service Company (the "Company") at a present base salary of $5,833.33 per month, (annualized salary is $70,000.00) plus a current overseas premium of $2.041.66 per month which is currently based on 35% of base pay (or $24,500.00 annualized premium). Both the base salary and overseas premium are subject to applicable taxes. As discussed during our interview, you will be working at the mine site of the copper operations (located in the province of Iran Jaya, Indonesia) of the Company's affiliate, P.T. Freeport Indonesia. Company ("PTFI") in accordance with arrangements between the company and PTFI. You will, however, remain an employee of the company for all purposes, including salary and benefits.

The normal work week is 54 hours. However, it must be emphasized the necessary overtime is frequent, and since this is a supervisory position, there is no overtime compensation. Also, you may be assigned shift work. Your point of origin. for purposes of company-provided travel and relocation allowances, will be established as Belt, Montana. As a member of the supervisory staff of the Company, you are provided with the opportunity to participate in benefits including life insurance, medical insurance, long term disability insurance, dental insurance, dependent life insurance, pension plan, and company savings plan (ECAP).

Summaries of these and other company benefits can be found in the "Working With Freeport–McMoRan" booklet. Your rights to benefits are governed by the terms, conditions and provisions of the applicable benefit plan documents, and in the event of any inconsistency

---

**1.** The record is unclear whether Freeport's offer of employment was initially communicated to Van Gundy, by phone, in December of 1994, or during an interview in New Orleans in January of 1995. Because Van Gun-

dy believes he first learned of the offer by phone in December of 1994, the court will assume the same for purposes of this Memorandum and Order.

between the summaries and the applicable benefit plan document, the plan document will control. Additionally, the policy manual, benefit plan document, and summary booklet are subject to change, with or without notice, and are in no way intended to create a contractual relationship between you and the company.

It is recognized and agreed that the exclusive remedy for any on-the-job injury will be governed by the Louisiana Worker's Compensation Act. Louisiana law will govern all issues that may arise out of the employment relationship.

This offer is contingent upon satisfactory completion of medical examinations for you and your family, as well as receiving the appropriate passports, visas and work permits. This offer is for employment at will. You, therefore, have the right to resign at any time, and the Company has the right to terminate your employment at any time.

We look forward to your joining the Company and assisting with this exciting operation. Should you have any questions about this offer, please feel free to call me at 1–800–624–7624 here in New Orleans. Please indicate your acceptance of our offer by signing the enclosed copy of this letter and returning it to me.

> Very truly yours.
> FREEPORT OVERSEAS SERVICE COMPANY
> (/s/ G.M. Chatham)
> G.M. Chatham
> Assistant Director
> International Human Resources

GMC/tzg

GENTLEMEN:

Accordingly, I hereby acknowledge by signing this 9th day of Jan., 1995, in New Orleans, Louisiana. I have received a copy of the FREEPORT OVERSEAS SERVICE COMPANY ORIENTATION AND COMPANY RELOCATION GUIDE, and also a copy of WORKING WITH FREEPORT–McMoRan INC.

> (/s/ James F. Van Gundy )
> Signature

(/s/ Tammy Golladay )

WITNESS

(/s/ Dianne P. Van Gundy )

WITNESS

Van Gundy indicated his acceptance of the employment offer by signing a copy of the referenced letter on January 9, 1995, while in New Orleans.[2]

In April of 1995, Van Gundy moved from Belt to Iran Jaya, Indonesia, and began work with Freeport as an Ore Flow Superintendent. Van Gundy remained in Indonesia until September 30, 1997, when he was discharged. The discharge was premised, in part, upon events occurring at a company safety meeting on September 19, 1997. The safety meeting was attended by a number of Freeport managers, safety department employees, and employees who worked in the same department as Van Gundy. The attendees included both expatriates and Indonesians. During the meeting, Van Gundy criticized the safety department for failing to give his subordinates proper credit for their safety efforts. Van Gundy's comments included a short outburst in which he used expletives. An Indonesian employee at the meeting expressed displeasure at Van Gundy's use of expletives.

**2.** Although Van Gundy contends his signature on the referenced letter did not operate as an acceptance of Freeport's employment offer, but only an acknowledgment that he received the offer, together with a copy of Freeport's Orientation and Company Relocation Guide and a document entitled "Working with Freeport–McMoRan Inc.", the record does not support this contention.

There is no evidence in the record of subsequent contract negotiations between the parties, or subsequent changes to the contract terms. Moreover, Van Gundy fails to present any evidence that his employment with Freeport was governed by a different contract executed after January 9, 1995.

Following the meeting, Van Gundy was questioned about his comments by certain Freeport managers. A written warning was issued reprimanding Van Gundy for his use of inappropriate language at the company safety meeting. When Van Gundy refused to sign the warning, he was discharged.[3] After his employment was terminated, Van Gundy returned to Montana where he instituted the present action. Van Gundy seeks compensatory damages and attorney fees premised upon Freeport's alleged violations of Montana's WDEA. §§ 39–2–901, *et seq.*

Freeport contends the present action should be dismissed because Louisiana law, not Montana law, governs the claims for wrongful discharge, and the undisputed facts reveal that Van Gundy does not have viable claim for wrongful discharge under applicable Louisiana law.

### DISCUSSION

The court must necessarily begin its analysis by addressing the choice of law issue presented by the parties. A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state's substantive law, applies. *Alaska Airlines, Inc. v. United Airlines, Inc.,* 902 F.2d 1400, 1402 (9th Cir.1990) (citing, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Accordingly, the court must apply Montana's choice of law rules to determine whether Louisiana law or Montana law governs Van Gundy's wrongful discharge claim.

3. The parties do not agree on the precise reason for Van Gundy's discharge. Freeport contends the discharge was based solely on Van Gundy's failure to sign the written warning. Van Gundy contends his discharge was also based upon the comments he made at the safety meeting.

4. Section 188 provides, in pertinent part, as follows:
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which. with respect to that issue, has the most significant relationship to the transaction and the parties....

### 1. *Application of Montana's Choice of Law Rules*

In Montana, if a contract contains a choice of law provision, the law of the chosen state governs any dispute arising from the contract unless either of the following two exceptions from the Restatement (Second) of Conflicts of Laws § 187(2) are·applicable. A court will not apply the state law chosen by the parties if:

a. the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

b. application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[4]

*See, Casarotto v. Lombardi,* 268 Mont. 369, 886 P.2d 931, 934–35 (1994), *rev'd on other grounds sub nom., Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)). Because the parties' employment contract in this case contains a choice of law provision which states that Louisiana law will govern any dispute aris-

(2) In the absence of an effective choice of law by the parties ... the context to be taken into account ... to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
*See,* Restatement (Second) of Conflict of Laws § 188.

ing from the parties' employment relationship, the court is compelled to apply Louisiana law in this matter unless one of the referenced exceptions applies.

### (1) *Exception under § 187(2)(a)*

Under this first exception, the court must determine whether the chosen state has a substantial relationship to the parties or the issue under review. In the present case, it cannot be reasonably disputed that Louisiana has a significant relationship with both the parties and the matter at issue because Freeport maintains offices in Louisiana, and the parties' employment contract was negotiated and executed in Louisiana. Based on these facts, the court concludes the first exception does not apply.

### (2) *Exception under § 187(2)(b)*

A proper analysis of the second exception requires a two-pronged inquiry. First, the court must determine whether Montana's interest in the present dispute is materially greater than Louisiana's interest, *i.e.*, whether Montana law would govern this matter in the absence of an effective choice of law by the parties. In making this determination, the court is to consider the following five factors described in section 188 of the Restatement (Second) of Conflicts of Law.

1. the place of contracting,
2. the place of negotiation of the contract,
3. the place of performance,
4. the location of the subject matter of the contract, and
5. The domicil, residence, nationality, place of incorporation and place of business of the parties.

*Keystone, Inc. v. Triad Systems Corp.*, 971 P.2d 1240, 1242 (Mont.1998), *quoting,* Restatement (Second) of Conflict of Laws § 188(2) (1971).[5] If the court concludes that Montana has a materially greater interest in this matter, the court must then undertake to determine whether application of Louisiana law would be contrary to fundamental policy of the State of Montana.

In the present case, the employment contract was executed in Louisiana. Significant negotiations occurred in Louisiana during Van Gundy's initial interview in November 1994, and later in January of 1995 when Van Gundy accepted Freeport's offer of employment. Some negotiations may also have occurred during phone conversations and letters exchanged between Van Gundy, in Montana, and Freeport, in Louisiana. The employment contract was performed exclusively in Indonesia. The location of the subject matter of the contract (*i.e.*, the Ore Flow Superintendent position) was, likewise, in Indonesia.[6] Freeport was a resident of Louisiana and Indonesia. Van Gundy was a resident of Montana and Indonesia. Applying the section 188 criteria to the foregoing facts, the court concludes that Louisiana has the greater interest in the present dispute, and, therefore, Montana law would not govern this matter in the absence of an effective choice of law provision.[7]

■ Having concluded that neither exception applies, and that Louisiana law governs the parties' dispute, the court must now determine whether Van Gundy has a viable claim for wrongful discharge under Louisiana law. In Louisiana, an employer may discharge an at-will employ-

---

5. The five factors are to be evaluated according to their relative importance with respect to the particular matter under scrutiny. *See, Casarotto,* 886 P.2d at 934.

6. Van Gundy makes the novel argument, without citation to any authority, that he, as the employee, was the subject matter of the employment contract at issue. Even if this were true, the location of the subject matter of the contract would remain as Indonesia

because Van Gundy resided in Indonesia at all times during his employment with Freeport.

7. Because the court concludes that Montana law would not apply in the absence of an effective choice of law by the parties, the court does not find it necessary to determine whether Louisiana law would be contrary to a fundamental policy of the state of Montana.

ee at any time, for any reason or for no reason at all, provided the discharge does not violate a statutory · or constitutional provision. *Gilbert v. Tulane Univ.,* 909 F.2d 124, 126 (5th Cir.1990); *see also, Dunbar v. Williams,* 554 So.2d 56 (La. App.1988).[8]

Because Van· Gundy's pleadings and brief focus solely on whether a viable claim for wrongful discharge exists under Montana law, the court deems it appropriate to afford Van Gundy an opportunity to submit a supplemental brief which focuses· on the viability of his wrongful discharge claim under Louisiana law. Van Gundy shall submit his brief on or before May 17, 1999. Freeport shall have up to and including May 31, 1999, to submit an appropriate response brief. Upon submission of these briefs, the court will be in a position to make an informed decision on Freeport's motion for summary judgment.

IT IS SO ORDERED.

---

8. For example, "[a]n employee cannot be terminated because of race, sex, or religious beliefs or because he/she exercised constitu-

tionally protected rights such as free speech." *Wusthoff v. Bally's Casino Lakeshore Resort, · Inc.,* 709 So.2d 913, 914 (La.App.1998).